IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Osha Johnson,<br><br>            Plaintiff,<br><br>v.<br><br>Lieutenant Christopher Timmons; Lieutenant Desmond Weston; Lieutenant Robinson; Lieutenant McKissack; Captain Damon Greene; and DHO Brown,<br><br>           Defendants. | C/A No.: 5:23-cv-3368-JFA<br><br><br>**ORDER** |

## I.    <u>Introduction</u>

Osha Johnson (Plaintiff), proceeding *pro se*, brings this action pursuant to 28 U.S.C. § 1983, alleging violations of his constitutional rights at Lee Correctional Institution. (ECF No. 1, pg. 40). In accordance with 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) (D.S.C.), the case was referred to the Magistrate Judge for pretrial proceedings.

On March 10, 2025, Defendants filed a second motion for sanctions, requesting the dismissal of Plaintiff's case for failure to obey a discovery order pursuant to Fed. R. Civ. P. 37(b)(2)(v) (Rule 37). (ECF No. 200). On March 21, 2025, the Magistrate Judge issued a thorough Report and Recommendation, recommending that this Court dismiss Plaintiff's claims for failure to participate in his deposition under Rule 37 or for failure to comply with a court order under Fed. R. Civ. P. 41(b) (Rule 41). (ECF No. 206). Plaintiff

filed extensive objections to the Report[1] (ECF Nos. 211), to which Defendants filed a reply. (ECF No. 213). Thereafter, Plaintiff filed a sur-reply.[2] (ECF No. 217). Therefore, this matter is ripe for review.

## II.    FACTS

Plaintiff's claims relate to a September 29, 2022, altercation at Lee Correctional Institution where Plaintiff brandished a weapon at multiple inmates after the inmates allegedly threatened Plaintiff with bodily harm. (ECF No. 206, pg. 2). Ultimately, South Carolina Department of Corrections (SCDC) officials named Plaintiff as the aggressor. *Id.* Following the inmate quarrel, several of the named Defendants allegedly deployed chemical munitions on Plaintiff. *Id.* Plaintiff alleges that several of the named Defendants ignored lung complications resulting from the chemical munitions and subjected him to inhumane living conditions. *Id.*

Since this lawsuit's filing, and throughout its duration, the Magistrate Judge has carefully presided over this case, offering Plaintiff every opportunity to advance his claims. According to the Magistrate Judge, "Plaintiff has filed more than 25 motions and nearly a dozen letters and objections to filings," many of which were duplicative of issues previously raised and resolved. *Id.* at 1.

---

[1] Plaintiff filed a motion for an extension of time to file objections to the Report. (ECF No. 210). To the extent Plaintiff continues to request for an extension (ECF No. 217, pg. 4), the Court informs Plaintiff that the Magistrate Judge granted his request on May 1, 2025. (ECF No. 215).

[2] This District's local rules do not permit parties to file sur-replies. However, because Plaintiff is proceeding *pro se*, the Court liberally construes Plaintiff's reply brief as additional objections to the Report. Therefore, the Court considers Plaintiff's filling in the below analysis.

On September 10, 2024, Defendants filed a motion to depose Plaintiff, which the Magistrate Judge granted. (ECF Nos. 135 & 146). Plaintiff, perturbed by the Magistrate Judge's order, filed an opposition motion and his own motions for discovery.[3] (ECF No. 206, pg. 3).

Despite the Magistrate Judge's order, Plaintiff refused to participate in his deposition. *Id.* at 3; *see also* ECF No. 166. Thereafter, Defendants moved for sanctions, offering dismissal of Plaintiff's case as an appropriate remedy. (ECF No. 166). Subsequently, Plaintiff filed a response in opposition in which he argued that his non-compliance was necessary because Defendants had violated their "obligation" to disclose certain information under the Federal Rules of Civil Procedure. (ECF No. 171, pgs. 4, 7).

After considering the parties' arguments, the Magistrate Judge granted Defendants' motion to the extent that it again ordered Plaintiff to sit for his deposition. (ECF No. 185). The Magistrate Judge also advised Plaintiff in bold lettering that any future refusal to sit or participate in his deposition may result in the dismissal of his case. *Id.* at 5. Additionally, in a subsequent order, the Magistrate Judge reminded Plaintiff that any future refusal to sit or participate in his deposition could result in a dismissal. (ECF No. 197, pg. 6). Notwithstanding, Plaintiff refused to fully participate in his second scheduled deposition. (ECF No. 200). The Court has reviewed the video of Plaintiff's second deposition and the moments leading up to Plaintiff's unilateral termination. The Court finds that the Report accurately recounts the exchange as follows:

---

[3] The Magistrate Judge granted in part and denied in part Plaintiff's discovery request. (ECF No. 156 & 167).

The video [] begins with Plaintiff's explanation of why he believes the surveillance video is altered. Plaintiff testified that many years ago, he assisted other inmates by altering videos with an iPhone. Plaintiff further testifies that when he looks at the footage being shown to him, it reminds him of times when he used to alter videos, and it 'glitches.' He alleges he believes whoever had custody of the video may have altered it, but he does not specifically allege any of the Defendants actually altered the video. Then, for several minutes Plaintiff and counsel for Defendants engage in a discussion about whether the video is altered. At one point during the video, Plaintiff states that he remembers the incident very clearly and he observed Lieutenant McCullough, as well as reading in her own incident report, that she was standing in a specific spot that is not shown on this video. Counsel for Defendant attempts to review the video with Plaintiff and asks Plaintiff questions regarding the video and the individuals present in the video. However, when counsel for Defendants attempted to play the surveillance video depicting the incident in question, Plaintiff appeared to become agitated. When questioned by counsel for Defendants whether Lieutenant McCullough was the female officer on the top tier, Plaintiff agreed but then responded, 'I hate when people do this man…I hate when people do this. The only thing I ask for is people to tell the truth.' He goes on further to state, 'when people do stuff, alter . . like this really mess with me bro.' Plaintiff requested that the deposition be postponed so that he can obtain the finances to hire an expert to review the video.

When counsel for Defendants explains that this is the court-ordered day for his deposition and offers to stipulate that Plaintiff believes the video is altered, Plaintiff becomes more upset and did not initially agree to this stipulation. Plaintiff states that he is not able to answer [defense counsel's questions] because he suspects the video is altered. Plaintiff then removes what appears to be a microphone from his uniform and informs counsel for Defendants he was done with his deposition, despite being warned by counsel that he would seek sanctions for the conduct. Counsel for Defendants then put on the record that Plaintiff was being non-responsive, [would] not listen to questions, and [would] not follow instructions to answer questions. Counsel for Defendants asked him again to watch the video and answer his questions about the video, and further counsel for Defendants made it clear that he would stipulate that Plaintiff was answering questions based on the video as it was being played but that Plaintiff's belief was that the video was altered. Plaintiff indicated a willingness to do so; however, when counsel for Defendants began to play the video again for Plaintiff to review and be asked questions, Plaintiff informed counsel for Defendants that at 3 p.m. he was leaving to take a shower. Counsel for Defendants explained that the deposition was taking a

significant amount of time through no fault of his own, and that counsel was going to finish his deposition and apologized if that meant Plaintiff would not be able to take a shower that afternoon. Plaintiff responded that he had to be able to take a shower and after some additional back and forth, Plaintiff ended the deposition because he explained he was getting upset. Specifically, Plaintiff said, 'I don't want to do nothing…none of that right there…because of my attitude and my demeanor right now that I don't feel safe' and 'you're patronizing me, you're antagonizing me, and you are asking me to attest something that is not true.' When counsel for Defendants began putting on the record that the parties did not agree to end the deposition, Plaintiff continued, 'this is a security issue because what you are doing right now is agitating me and it's going to get me frustrated to a point where I'm going to want to do something, so I'm walking out, I'm walking out right now sir.'

(ECF No. 206, pgs. 7–9) (internal citations omitted).

Following Plaintiff's abrupt deposition exit, Defendants filed their second motion for sanctions, again requesting dismissal of Plaintiff's claims for failure to obey a discovery order. (ECF No. 200). Although Plaintiff did not file a response to Defendants' motion[4], he did, in apparent anticipation of a sanctions motion, file a letter explaining his conduct. (ECF No. 202). Plaintiff claimed, "the defense attorney was doing and saying thing which was provocative." *Id.* at 1 (written as appears in the original). Namely, Plaintiff accused defense counsel of calling him a "liar," an insult that "inflames

---

[4] Plaintiff alleges that certain individuals are conspiring to "separate" him from his legal work and that he never received Defendants' second motion for sanctions. (ECF No. 211, pgs. 2–3); (ECF No. 217, pgs. 4–5). Accordingly, Plaintiff argues he could not meaningfully respond to Defendants' motion. *Id.* at 3. Plaintiff asks the Court to "get out of here put on your glasses or pop in your contacts and see through the bull shit." (ECF No. 217, pg. 5) (written as appears in original). As an initial matter, the Court finds doubtful Plaintiff's assertion that prison officials are surreptitiously withholding Plaintiff's legal mail. Plaintiff has received all prior legal mail, as evidenced by his numerous responses, replies, and objections. Moreover, it is unlikely any response filed by Plaintiff would have altered the Magistrate Judge's recommendation. The Magistrate Judge thoroughly reviewed the record and applicable law and Plaintiff's objections to the Report do not present any new evidence or arguments that warrant a different outcome. Notably, Plaintiff's objections raise many of the arguments asserted in Plaintiff's post-deposition letter (ECF No. 202), which the Magistrate Judge carefully addressed in the Report.

[Plaintiff] to the point [of] wanting to hit" someone. *Id.* at 1–2. Plaintiff alleged that the surveillance video played during his deposition was altered in a way that undermines his claims and requested time to commission an expert to review the video. *Id.* at 2–3. Finally, Plaintiff informed the Court that he left his second deposition because "his anger had risen to a level which had he stayed he would have because a issue/concern to security (I was on the verge of acting out and at the end of the day I don't desire to be tortured no more so it came down to a choose either stay and allow my anger to build until I acted out, went off and risking by subjected to another use of force or walk out to get control of myself and avoid another use of force." *Id.* at 4 (written as appears in the original).

After reviewing the record and the parties' submissions, the Magistrate Judge concluded that Plaintiff's case should be dismissed pursuant to Rules 37 and 41. For the reasons discussed below, the Court agrees.

## III. STANDARD OF REVIEW

The Magistrate Judge makes only a recommendation to this Court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with the Court. *Mathews v. Weber*, 423 U.S. 261 (1976). A district court is only required to conduct a *de novo* review of the specific portions of the Magistrate Judge's Report to which an objection is made. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b); *Carniewski v. W. Virginia Bd. of Prob. & Parole*, 974 F.2d 1330 (4th Cir. 1992). In the absence of specific objections to portions of the Magistrate's Report, this

Court is not required to give an explanation for adopting the recommendation. *See Camby v. Davis*, 718 F.2d 198, 199 (4th Cir. 1983). Thus, the Court must only review those portions of the Report to which Petitioner has made a specific written objection. *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 316 (4th Cir. 2005). Then, the court may accept, reject, or modify the Report or recommit the matter to the magistrate judge. 28 U.S.C. § 636(b).

"An objection is specific if it 'enables the district judge to focus attention on those issues—factual and legal—that are at the heart of the parties' dispute.'" *Dunlap v. TM Trucking of the Carolinas, LLC*, No. 0:15-cv-04009-JMC, 2017 WL 6345402, at *5 n.6 (D.S.C. Dec. 12, 2017) (citing *One Parcel of Real Prop. Known as 2121 E. 30th St.*, 73 F.3d 1057, 1059 (10th Cir. 1996)). A specific objection to the Magistrate Judge's Report thus requires more than a reassertion of arguments from the complaint or a mere citation to legal authorities. *See Workman v. Perry*, No. 6:17-cv-00765-RBH, 2017 WL 4791150, at *1 (D.S.C. Oct. 23, 2017). A specific objection must "direct the court to a specific error in the magistrate's proposed findings and recommendations." *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982).

"Generally stated, nonspecific objections have the same effect as would a failure to object." *Staley v. Norton*, No. 9:07-0288-PMD, 2007 WL 821181, at *1 (D.S.C. Mar. 2, 2007) (citing *Howard v. Secretary of Health and Human Services*, 932 F.2d 505, 509 (6th Cir. 1991)). The Court reviews portions "not objected to—including those portions to which only 'general and conclusory' objections have been made—for *clear error*." *Id.*

(citing *Diamond*, 416 F.3d at 315; *Camby*, 718 F.2d at 200; *Orpiano*, 687 F.2d at 47) (emphasis added).

## IV.    **DISCUSSION**

The Magistrate Judge recommends dismissing Plaintiff's claims pursuant to Rules 37 and 41. Rule 37 permits a court to dismiss an action if a party "fails to obey an order to provide or permit discovery." Fed. R. Civ. P. 37(b)(2)(v). Additionally, a court may dismiss an action under Rule 41 when "the plaintiff . . . fails to comply with . . . a court order." Fed. R. Civ. P. 41(b).

Courts employ a four-part test to determine the appropriate sanctions under Rule 37: "(1) whether the non-complying party acted in bad faith; (2) the amount of prejudice that non-compliance caused the adversary; (3) the need for deterrence of the particular sort of non-compliance; and (4) whether less drastic sanctions would have been effective." *Anderson v. Found. for Advancement, Educ. and Emp. of Am. Indians*, 155 F.3d 500, 504 (4th Cir. 1998). Similarly, courts review four factors when considering dismissal under Rule 41: "(1) the degree of personal responsibility on the part of the plaintiff; (2) the amount of prejudice to the defendant caused by the delay; (3) the presence or absence of a drawn-out history of deliberately proceeding in a dilatory fashion; and (4) the effectiveness of sanctions less drastic than dismissal." *Davis v. Williams*, 588 F.2d 69, 70 (4th Cir. 1978) (internal citation omitted).

Applying the factors outlined above, the Magistrate Judge found that Plaintiff's conduct warrants dismissal under Rules 37 and 41. In response, Plaintiff filed fifty pages

of handwritten objections. (ECF Nos. 211 & 217). Many of Plaintiff's objections fail to meaningfully address the Report, or rehash discovery disputes already addressed by the Magistrate Judge.[5] However, when liberally construing Plaintiff's submissions, the Court has identified six specific objections. Each is addressed below.

Objection 1

As an initial matter, Plaintiff argues that the Magistrate Judge failed to "weigh the required factors" when considering Defendants' sanctions motion. (ECF No. 211, pg. 28). Plaintiff does not identify specific factors that the Magistrate Judge failed to weigh, but rather, cites South Carolina state court cases discussing trial court abuse of discretion. *Id.*

The record does not support Plaintiff's argument; the Magistrate Judge's recommended findings evince that she carefully considered the history of this case, Plaintiff's *pro se* status, and the risks of proceeding with Plaintiff's claims. First, Plaintiff's refusal to participate in two depositions despite repeated advisement and warning is cited to demonstrate Plaintiff's bad faith and responsibility for non-compliance. (ECF No. 206, pgs.10–11). Likewise, the money and time lost, combined with Defendants' inability to discover evidence central to their defense, are cited to support the prejudicial effect of Plaintiff's non-compliance on Defendants. *Id.* at 11, 13. Similarly, the financial and temporal burden caused by Plaintiff's conduct and the "sheer volume of filings" are cited to support Plaintiff's history of intentionally slowing

---

[5] Plaintiff argues that his objections are "sufficiently specific" when considering his *pro se* status. (ECF No. 217, pg. 5). Further, Plaintiff argues that he has provided "as much evidence as any 'pro se prisoner' can ever hope to provide." (ECF No., 211, pg. 29). The Court is mindful of Plaintiff's *pro se* status and has carefully parsed through his objections to ensure that he is heard on all issues that are responsive to the Report.

discovery and the need for deterrence of future misconduct.[6] *Id.* at 12–13. Finally, Plaintiff's sensitivity to adverse opinions, non-compliance in the face of repeated warnings of possible dismissal, and *in forma pauperis* status are cited to support the ineffectiveness of sanctions less drastic than dismissal. *Id.*

After reviewing the record and the Report's proposed findings, the Court finds that the Magistrate Judge carefully weighed the appropriate factors. Therefore, Plaintiff's objection is overruled.

Objection 2

Next, Plaintiff argues that the Report ignores his "multiple" requests for a "period of time to collect himself" during the deposition. (ECF No. 211, pg. 3). Specifically, Plaintiff references his requests to leave the deposition for his afternoon shower. *Id.* Plaintiff maintains that showering is vital to his health because he "developed skin cancer." *Id.*

Although unclear, Plaintiff appears to reference his shower requests to undermine his culpability in terminating his second deposition. The Court is unconvinced. Even if Plaintiff attempted to "collect himself" prior to terminating his second deposition, his conduct remains unjustified. Plaintiff refused to attend or fully participate in two

---

[6] Plaintiff alleges that the Magistrate Judge failed to consider Defendants' delay in producing certain videos and audio files. (ECF No. 211, pg. 6). Specifically, Plaintiff appears to argue that the Magistrate Judge failed to consider the delay caused by Defendants' withholding in the Rule 41 analysis. *Id.* Further, Plaintiff alleges that he was prejudiced by Defendants' delay because he could have challenged the video's veracity before the deposition. *Id.* at 7. As an initial matter, as discussed in detail below, the Court finds that Plaintiff suffered no prejudice by Defendants' conduct. Additionally, there is no evidence Defendants have withheld evidence that they were required to produce with the intent of delaying litigation. Rather, Defendants' interests are tied to an expeditious resolution of this lawsuit.

depositions, despite clear court instructions and warnings. Plaintiff's conduct evinces a willful disregard for the Magistrate Judge's order and defense counsel's efforts to conduct discovery. Accordingly, the Court finds no error in the Report, notwithstanding Plaintiff's attempts to "collect himself." Therefore, Plaintiff's second objection is overruled.

Objection 3

Next, Plaintiff delivers a diatribe on the alleged manipulated surveillance video played during his second deposition. *Id.* at 3–5, 18, 20, 23. Plaintiff maintains that it contradicts his first-hand knowledge of the incident. *Id.* at 3–5, 18, 20; (ECF No. 217, pg. 9). According to Plaintiff, the only possible explanation is that Defendants, defense counsel, or some other unidentified bad actor altered the video.[7] (ECF No. 211, pgs. 5, 11–12, 16, 19–20); (ECF No. 217, pgs. 16–17). Therefore, according to Plaintiff, he needed to end the deposition to avoid providing testimony predicated on a fabricated video in violation of his oath to tell the truth. *Id.* at 4, 8–13, 15–16, 18, 20, 24–27; (ECF No. 217, pg. 7–9). Plaintiff argues that he did not violate the Magistrate Judge's discovery order because it forced him to lie in violation of the law. (ECF No. 217, pg. 8–9, 21). Further, Plaintiff argues that he had to challenge the video's veracity before trial so as not to prejudice a future jury. (ECF No. 211, pgs. 24, 29); (ECF No. 217, pgs. 9–10). Plaintiff asks the Court to decline to adopt the Report and afford him an opportunity to hire a forensic examiner to verify the video's integrity. *Id.* at 16, 20–21, 31. In the

---

[7] Plaintiff indicates that he believes that there is a larger conspiracy orchestrated by SCDC to conceal evidence that implicates Defendants' alleged wrongdoing. (ECF No. 217, pg. 11).

alternative, Plaintiff asks the Court to conduct an "independent investigation" into "Defendants' fraud." (ECF No. 217, pg. 20). Plaintiff maintains that this is necessary to undermine Defendants' reliability, boost his credibility, deter future defendants from falsifying evidence, and protect future *pro se* plaintiffs. (ECF No. 211, pgs. 12, 23); (ECF No. 217, pgs. 13–16, 21–22). The Court declines Plaintiff's invitation.

First, Plaintiff lacks any good faith basis to dispute the video's veracity. Beyond Plaintiff's conclusory and self-serving allegations, there is no evidence in the record that anyone manufactured or altered the surveillance video. Notably, the Magistrate Judge already considered spoliation allegations that are identical or tangential to those raised in Plaintiff's objections and ruled in Defendants' favor.[8] (ECF No. 185). Further, Plaintiff's speculative allegations rest on his video alteration experience, not on any evidence or technical analysis.

Plaintiff cites supposed incidents where Defendant Brown and Lt. Mccullough "changed their story" to suggest that the surveillance video was manipulated. (ECF No. 217, pgs. 11–12). Specifically, Plaintiff references an audio tape where Lt. Mccullough "committed perjury.[9]" *Id.* at 12. Plaintiff argues that the audio tape contradicts the video

---

[8] Although unclear, Plaintiff appears to challenge the enforceability of the Magistrate Judge's prior rulings. (ECF No. 217, pg. 23). Plaintiff correctly notes that U.S. Magistrate Judges are limited in authority over dispositive motions. 28 U.S.C. § 636(b)(1)(B); *see also Elijah v. Dunbar*, 66 F.4th 454, 459 (4th Cir. 2023) ("The authority of magistrate judges is narrowly limited by Article III."). However, Magistrate Judges are afforded wide latitude when ruling on non-dispositive motions. *See* 28 U.S.C. § 636(b)(1)(A) (stating that non-dispositive rulings by U.S. Magistrate Judges should be reconsidered only when they are "clearly erroneous or contrary to law"); *see also* Fed. R. Civ. P. 72(a). The Court is unsure of what prior non-dispositive orders Plaintiff contests; however, any remaining objections are hereby moot by issuance of this order.

[9] Plaintiff also suggests that Lt. Mccullough's incident report contradicts the video footage, thus proving that the footage was altered. (ECF No. 211, pg. 21).

when viewed in the light most favorable to him. *Id.* Plaintiff maintains that the alleged manufactured video would prejudice him at trial. *Id.* at 13–15. Therefore, Plaintiff implies that he was justified in prematurely terminating his second deposition. *See id.* at 12–13.

Plaintiff misses the mark. First, it is unclear from Plaintiff's jumbled rant whether the cited audio tape indicates that Defendants, defense counsel, and members of SCDC surreptitiously manipulated video evidence to sabotage Plaintiff's lawsuit. Moreover, and more importantly, Plaintiff again ignores the pivotal issue. Parties to litigation often disagree over the relevance, weight, and authenticity of evidence. However, they must still cooperate with court orders and the rules of discovery.

Fed. R. Civ. P. 30(c) states:

> An objection at the time of the examination–whether to *evidence*, to a party's conduct, to the officer's qualifications, to the manner of taking the deposition, or to any other aspect of the deposition–must be noted on the record, *but the examination still proceeds*; the testimony is taken subject to any objection.

Fed. R. Civ. P. 30(c) (emphasis added).

Of course, the Court does not expect Plaintiff to memorize or master the vast and nuanced law of civil procedure. However, the Court does expect Plaintiff to comply with court orders and engage with opposing counsel in a respectful manner. Plaintiff demonstrated his inability to do so on two occasions. Plaintiff's conduct is particularly troublesome when considering defense counsel's willingness to proceed with each video-related question with the stipulation that Plaintiff disputed its authenticity. Accordingly,

the Magistrate Judge accurately concluded that Plaintiff's conduct warrants dismissal of his claims. Therefore, for the reasons discussed above, Plaintiff's objection is overruled.

Objection 4

Plaintiff next objects to the Magistrate Judge's finding that his conduct prejudiced Defendants. (ECF No. 211, pg. 11). Instead, Plaintiff contends Defendants prejudiced themselves by manipulating evidence. *Id.* at 11, 19–20.

As discussed above, Plaintiff has presented nothing but self-serving testimony to support his claim that Defendants altered the surveillance video. In contrast, the record is replete with instances of prejudice suffered by Defendants resulting from Plaintiff's conduct. First, Plaintiff's non-compliance has cost Defendants the financial and temporal burden of rescheduling depositions, deposition preparation, and seeking court intervention. Additionally, Plaintiff's abrupt termination prevented Defendants from developing a complete evidentiary record and deprived them of the opportunity to elicit relevant and potentially case-dispositive testimony. Further, Plaintiff's continued insistence that the surveillance video was altered indicates that Defendants will suffer further prejudice if this lawsuit continues. Accordingly, the Court finds no error in the Report and Plaintiff's fourth objection is overruled.

Objection 5

Plaintiff also objects to the Magistrate Judge's finding that he acted willfully and in bad faith.[10] *Id.* at 12, 16, 21. Plaintiff maintains that he sincerely believes that the video

---

[10] Plaintiff insists that Defendants acted fraudulently and in bad faith by altering the surveillance video. (ECF No. 211, pgs. 28, 30); (ECF No. 217, pgs. 7, 18–22). Plaintiff argues that

was altered and argues that he left his deposition in an "act of desperation." *Id.* at 12. Plaintiff argues that he had to contest the video's veracity at his deposition to inhibit Defendants from presenting false evidence at trial. *Id.* at 24, 29. Therefore, according to Plaintiff, dismissal pursuant to Rules 37 and 41 is inappropriate because "Defendants are responsible for [his] conduct." *Id.* at 24–25.

Again, absent Plaintiff's self-serving statements, there is no evidence that Defendants altered the surveillance video. However, even accepting as true Plaintiff's sincerely held belief, it does not negate a finding that his conduct was both willful and in bad faith.

As the Magistrate Judge stated, "Plaintiff may hold the sincere belief that the incident occurred in a different way than []as depicted on the video footage, [but] he was undoubtedly aware that he was under a court order to answer Defendants' questions." (ECF No. 206, pg. 13). In other words, the Court does not fault Plaintiff for his beliefs, but rather, for his willful decision to disregard two court-ordered depositions. Plaintiff's willful defiance is underscored by the Magistrate Judge's repeated reminders that he must sit for his deposition or face possible dismissal. Further, Plaintiff's continued insistence that the surveillance video was manipulated indicates that Plaintiff would likely repeat his

---

Defendants' conduct violates 18 U.S.C. §1519. (ECF No. 211, pg. 19). As already discussed, Plaintiff's claims of evidentiary manipulation are dubious. The Court is satisfied by defense counsel's submissions that no bad faith or fraud was perpetuated by Defendants or their attorneys. *See* Fed. R. Civ. P. 11(b)(1) & (3) ("By presenting to the Court a pleading, written motion or other paper, . . . an attorney [] certifies that . . . it is not being presented for any improper purpose . . . [and that] the factual contentions have evidentiary support."). Moreover, § 1519 only applies to the manipulation of evidence with the intent to disrupt the investigation of federal officials; therefore, even accepting Plaintiff's allegations as true, § 1519 is inapplicable. *See* 18 U.S.C. § 1519.

uncooperative behavior. Plaintiff implies as much in his objections: "My duty is to make sure that the truth prevails over falsehood so if I must do so at the risk of sanction then come on let go to the supreme court with this matter because I stand firmly on this I am the right party, my conduct is a open challenge to the defendants".[11] (ECF No. 211, pg. 8) (written as appears in original). Accordingly, the Court finds no error in the Magistrate Judge's bad faith analysis, and therefore, Plaintiff's objection is overruled.

Objection 6

Next Plaintiff argues that the Magistrate Judge misconstrued his post-deposition admission of anger. (ECF No. 211, pgs. 9–10). In Plaintiff's post-deposition letter, he explained that "his anger had risen to a level which had he stayed he would have because a issue/concern to security (I was on the verge of acting out and at the end of the day I don't desire to be tortured no more so it came down to a choose either stay and allow my anger to build until I acted out, went off and risking by subjected to another use of force or walk out to get control of myself and avoid another use of force." (ECF No. 202, pg. 4).

> The Magistrate Judge addressed Plaintiff's admission in the Report:
>
> [T]hroughout the entirety of the deposition and indeed, even in his own filings afterward with the court, Plaintiff implies that his sitting for his deposition and the resulting agitation presents a security issue, which, when understood in context, suggests he could lose his temper on the individuals

---

[11] Plaintiff claims his actions conform with South Carolina Supreme Court precedent. (ECF No. 211, pg. 26) (citing *Davis v. Parkview Apartments*, 409 S.C. 266, 280, 762 S.E.2d 535, 543 (2014)) ("[T]o challenge the specific rulings of [] discovery orders, the normal course is to refuse to comply, suffer contempt, and appeal from the contempt finding."). The Court notes again that Plaintiff's objection to evidence did not permit or require defiance of a court order. *See* Fed. R. Civ. 30(c).

> in the room. Defendants' counsel asserts that while Plaintiff did not make a direct threat of harm, he believed based on the Plaintiff's demeanor and statements, that this was the implication. Indeed, Plaintiff stated in his letter sent after the attempt to depose him that he was so inflamed he was getting to a point where he wanted to hit somebody. Not only are Defendants unable to obtain the discovery they seek, but it is not certain whether it is even advisable for counsel to attempt yet again to solicit testimony from Plaintiff.

(ECF No. 206, pg. 11). Plaintiff alleges that the Magistrate Judge mischaracterized the significance of his letter. (ECF No. 211, pgs. 9–10). According to Plaintiff, the Court should not construe his admission of anger as a danger to defense counsel, but rather, it serves as evidence of his emotional control. *Id.* at 9, 16–17.

Often, litigation may become overwhelming; it requires all parties to remain civil and cooperative in the most trying of times. The Court is mindful of Plaintiff's limited legal experience, particularly with formal proceedings such as depositions. Further, the Court commends Plaintiff on his exercise of restraint and encourages his continued pursuit of emotional control. However, as discussed above, Plaintiff has failed to exercise the civility and cooperativeness required to continue in this litigation. Additionally, the Court agrees with the Magistrate Judge that future interactions between Plaintiff and defense counsel are ill-advised, notwithstanding Plaintiff's efforts to suppress his violent reflections. The Court finds no error in the Magistrate Judge's characterization of Plaintiff's letter. Therefore, Plaintiff's objection is overruled.

## V. **CONCLUSION**

The Court is mindful of the "strong policy in favor of merits-based adjudication." *See Colleton Preparatory Acad., Inc. v. Hoover Universal, Inc.*, 616 F.3d 413, 418 (4th Cir. 2010). The Court finds this principle particularly compelling in cases where the plaintiff is incarcerated and unrepresented. However, based on the foregoing, the Court finds that this case presents one of the rare instances where proceeding on the merits is injudicious.

After carefully reviewing the applicable laws, the record in this case, the Report and Recommendation, and the objections thereto, this Court finds that the Magistrate Judge's recommendation fairly and accurately summarizes the facts and applies the correct principles of law. Accordingly, the Court adopts the Report in all regards. Thus, Defendants second motion for sanctions (ECF No. 200) is granted, and Plaintiff's action is dismissed with prejudice.[12]

IT IS SO ORDERED.

June 23, 2025  
Columbia, South Carolina

Joseph F. Anderson, Jr.  
United States District Judge

---

[12] Plaintiff's pending motion for modification (ECF No. 203) and motion for temporary injunctive relief (ECF No. 204) and the objections relating to those motions (ECF No. 211, pgs. 31–35) are dismissed as moot.